UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL MAYBERRY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:25-cv-02617-JMS-TAB |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

Paul Mayberry has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 1.] He challenges a prison disciplinary proceeding at New Castle Correctional Facility in which he was found guilty of Offense A-100, Violation of Law (for counterfeiting/forgery), and sanctioned with a loss of 90 days of earned credit time, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 20-5.] For the reasons explained below, the disciplinary proceeding did not violate Mr. Mayberry's due process rights and his habeas petition is **DENIED**.

## I.
### LEGAL BACKGROUND

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: (1) the issuance of at least 24 hours advance written notice of the charge; (2) a limited opportunity to call witnesses and present

evidence to an impartial decision-maker; (3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and (4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On August 11, 2025, Case Manager J. Gallatin wrote a Conduct Report in which he stated:

On [August 7, 2025 and 10:30 a.m.], I Case Manager Gallatin was conducting programs rounds with the Restricted Housing Unit. During my rounds on the 300 range, I arrived at I/I Mayberry's cell. He was waiting for me and wanted to talk to me about his current situation. We talked for about ten minutes and then he handed me a few things he wanted looked into/sent out through the mail. I took them and completed my rounds for that day.

Upon returning to my office, I reviewed the items that I/I Mayberry handed me. One of said items was an envelope lab[e]led legal mail. Said envelope was fully sealed with the I/I's mailing information and the send address to IDOC Central Office. On the back, there was a notation of approval in the name of "Lt. Krul". Upon inspection of the name, I noticed that the handwriting as well as ink used for the name appeared to be identical to that of I/I Mayb[e]rry[']s handwriting and ink used. I took it upon myself to investigate further. I sent said item to [Unit Team Manager ("UTM")] Clark for further investigation.

On Monday, 8/11/2025, I received the item back with confirmation from UTM Clark from custody staff that the name in question was not written by Lt. [Krul], as he has not been at the facility for three weeks. With this being said, it can be noted that I/I Mayberry violated IDOC Policy #02-01-103 Section IX, Page 14 first paragraph: "Mail that has been submitted by an incarcerated individual shall not be returned to the incarcerated individual for sealing after it has been inspected and monitored. Designated facility staff shall seal all outgoing correspondence after it has been inspected and reviewed and prior to it being delivered to the designated mail carrier" by taking it upon himself to seal said [item] without staff inspection.

It can also be noted that I/I Mayb[e]rry violated Indiana Code 35-43-5-2 Counterfeiting; Forgery, by attempting to forge the initials of a facility staff member to notate inspection and approval by said staff member at any attempt to send out mail for his own benefit. In doing so, I/I Mayberry is in violation of IDOC

2

> Disciplinary Code A100 Violation of Law.  I/I Mayberry has been made aware of this conduct.

[Filing No. 20-1.]  The envelope that formed the basis for the charge against Mr. Mayberry reflects Mr. Mayberry's handwriting on the front of an envelope marked "Legal Mail" and dated "8-4-2025," and "lt Krul" on the back of the envelope, which also appears to be in Mr. Mayberry's handwriting.  [Filing No. 20-6 at 1-2.]  The Evidence Record for the envelope describes it as "Envelope containing Legal Mail sealed w/ alleged forged initials[.]  Remittance pertaining to Legal Mail," and is signed by Case Manager J. Gallatin.  [Filing No. 20-6 at 4.]

Also on August 11, 2025, UTM W. Clark completed a Notice to Lay Advocate/Witness form in which he stated:

> I, UTM W. Clark, met with facility custody staff to verify the staff signature on the back of the envelope.  Custody staff verified that the signature was not legitimate and that Lt. Krul has left the facility approximately 3 weeks prior.

[Filing No. 20-7.]

Mr. Mayberry was notified of the charge on August 12, 2025, when he received a copy of the Conduct Report and the Screening Report.  [Filing No. 20-1; Filing No. 20-2.]  He pled not guilty to the offense and did not request a lay advocate, any witnesses, or any physical evidence. [Filing No. 20-2; Filing No. 20-3.]

On August 14, 2025, Mr. Mayberry submitted a Request for Interview.  [Filing No. 20-4.] He stated that his witnesses, who were correctional officers, would "say that [he] always ask[s] staff to sign [his] mail," and that he "Don't Trust Nobody."  [Filing No. 20-4.]  His request was denied and the reviewing staff member noted "no question for witness."  [Filing No. 20-4.]

A hearing was held on August 18, 2025.  [Filing No. 20-5.] Mr. Mayberry appeared at the hearing, pled not guilty, and provided the following statement: "The man signed the paper." [Filing

3

No. 20-5.]  The disciplinary hearing officer ("DHO") considered Mr. Mayberry's statement, staff reports, and physical evidence which included "copies of papers."  [Filing No. 20-5.]  He found Mr. Mayberry guilty of Offense A-100, Violation of Law, stating as the reason for his decision: "Based on copies of envelope and remittance slip having similar color and writing."  [Filing No. 20-5.]  Mr. Mayberry was sanctioned with a loss of 90 days of earned credit time, along with other non-custodial sanctions not relevant to this proceeding.  [Filing No. 20-5.]

Mr. Mayberry appealed to the Facility Head and the Indiana Department of Correction ("IDOC") final reviewing authority, and his appeals were denied.  [Filing No. 20-8; Filing No. 20-9.]  He then brought a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  [Filing No. 1.]

### III.
#### ANALYSIS

Mr. Mayberry raises one argument in his Petition: that he was denied witnesses at his disciplinary hearing.  [Filing No. 1 at 5.]  He states:

> I requested witnesses and the denial was not explained nor was it given to me in written notice on form 39586 per policy 02-04-101.  This is a due process violation under WOLFF.

[Filing No. 1 at 5.]

The Respondent argues that Mr. Mayberry did not request witness statements at the August 12, 2025 screening and that when he identified several correctional officers who he claims would "say that [he] always asked staff to sign [his] mail," he "never identified the question he wanted to ask these witnesses."  [Filing No. 20 at 8 (quotation omitted).]  The Respondent asserts that "[i]t was reasonable to deny the request for statements because [Mr.] Mayberry did not provide the questions to be asked," and notes that Mr. Mayberry did not repeat his request for witness

4

statements at the disciplinary hearing.  [Filing No. 20 at 8.]  The Respondent contends that Mr. Mayberry maintained his defense that Lt. Krul had inspected his mail, signed the back of the envelope, and returned the envelope to Mr. Mayberry.  [Filing No. 20 at 8.]  The Respondent argues that even if Mr. Mayberry's request for statements from other officers was sufficient, the hearing officer could have denied the request because if the officers testified as Mr. Mayberry believed that they would have, "this information would not make it less likely that [Mr.] Mayberry forged Lt. Krul's signature."  [Filing No. 20 at 8-9.]  The Respondent notes that Lt. Krul had stopped working at the facility before the date on the remittance slip and weeks before Mr. Mayberry turned in the envelope, and submits a Declaration from Rebecca Cridge, a Tort Claims Investigator and Disciplinary Hearing Appeals Officer, stating that Lt. Krul's last day working at New Castle Correctional Facility was July 24, 2025.  [Filing No. 20 at 9; Filing No. 20-13 at 1.]  The Respondent asserts that even if Lt. Krul had inspected the letter, he would not have returned the envelope to Mr. Mayberry but would have taken it to the designated mail carrier.  [Filing No. 20 at 10.]  Finally, the Respondent argues that even if Mr. Mayberry was informed of the denial of a witness in a method that contradicted IDOC policies, such a violation of policy does not constitute a due process violation that would entitle Mr. Mayberry to habeas relief.  [Filing No. 20 at 10-11.]

Mr. Mayberry did not file a reply.

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton,* 344 F.3d 647, 678 (7th Cir. 2003) (citing *Wolff,* 418 U.S. 539, 566 (1974)).  When a prisoner challenges the denial of witnesses in a prison disciplinary proceeding, it is the prison official's

burden to provide a justification for the denial. *Ponte v. Real*, 471 U.S. 491, 499 (1985); *see also Wilson v. Davis*, 102 F. App'x 37, 38 (7th Cir. 2004) ("The burden is on the state to offer a rational explanation for the denial of an inmate's request for witnesses.").  Here, staff denied Mr. Mayberry's witness request because there was "no question for witness" on his request form. [Filing No. 20-4.]  Mr. Mayberry was required to describe what the denied witnesses would have testified to that would have aided in his defense, *see Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness), and he did so, [Filing No. 20-4 (Mr. Mayberry stating that requested witnesses would "say that [he] always ask[s] staff to sign [his] mail")].

The Respondent relies upon IDOC policy for its argument that Mr. Mayberry was required to list the questions that he would ask the witnesses.  [*See, e.g.*, Filing No. 20 at 8 (the Respondent arguing that "[i]t was reasonable to deny the request for statements because Mayberry did not provide the questions to be asked").]  But it is not clear whether Mr. Mayberry intended to request witness statements or for the witnesses to testify live at the disciplinary hearing, and the only IDOC policy related to providing questions for witnesses that is reflected in the documents submitted by the Respondent applies only to witnesses who are not providing live testimony.  [Filing No. 20-11 at 29 (Part IX.D.2.i. of IDOC's Manual of Policies and Procedures stating that witnesses who are not providing live testimony "shall be offered the opportunity to present a written statement based upon questions presented by the incarcerated individual at the time the incarcerated individual is screened").]

In any event, whether or not Mr. Mayberry was actually required to provide the specific questions that he planned to ask witnesses such that the denial of his request for witnesses was justified, the right to call witnesses extends only to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The right is further limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Here, testimony from correctional officers that Mr. Mayberry always asked staff to sign his mail would not have created a reasonable probability of a different result. The back of the envelope containing Mr. Mayberry's mail, which purports to reflect Lt. Krul's signature, appears to be Mr. Mayberry's handwriting and, most significantly, Mr. Mayberry has not contradicted the Respondent's evidence that Lt. Krul stopped working at New Castle Correctional Facility on July 24, 2025 – more than a week before the date on Mr. Mayberry's envelope and the date reflected on his Request for Remittance. [Filing No. 20-6 at 2-3; Filing No. 20-13.] The fact that Mr. Mayberry would always ask staff to sign his mail does not contradict the finding that he forged Lt. Krul's signature in violation of Ind. Code § 35-43-5-2 and, consequently, committed Offense A-100, Violation of Law.

Further, to the extent that Mr. Mayberry argues that the Respondent did not follow IDOC policies in informing him of the denial of his request for witnesses, that cannot form the basis for habeas relief. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472,

481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import – and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Because the expected testimony from the witnesses that Mr. Mayberry wished to call was not reasonably likely to change the outcome of the disciplinary proceeding, the Court finds that denying his request for those witnesses to provide statements or testify did not constitute a due process violation. Additionally, Mr. Mayberry's argument that the Respondent violated IDOC policy by failing to properly inform him of the denial of his request for witnesses cannot form the basis for habeas relief. Accordingly, the Court **DENIES** Mr. Mayberry's Petition for a Writ of Habeas Corpus. [Filing No. 1.]

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Mayberry to the relief he seeks. Accordingly, Mr. Mayberry's Petition for a Writ of Habeas Corpus, [1], is **DENIED** and the action **DISMISSED**. Judgment consistent with this Order shall now issue.

Date: 4/29/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

8

**<u>Distribution</u>:**

Paul Mayberry
#915471
Westville Control Unit
5501 S. 1100 W.
Westville, IN 46391

**<u>Electronic Service to</u>:**

Indiana Attorney General
Indiana Department of Correction